# EXHIBIT  3

# Part A

KC **F I L E D**

DEC 1 8 2007
DEC 18, 2007 )
MICHAEL W. DOBBINS )
CLERK, U.S. DISTRICT COURT )
)

**United States District Court**
**Northern District of Illinois**
**Eastern Division of Illinois**

Kathryn M. Lakeberg )
)
v. )
)
)
United Parcel Service )
Larry Kruml (United Parcel Service) )
Sue Jabrowski (United Parcel Service) )
Teamster Local Union 705 )
Kenny Emanulson (Teamster Local Union 705) )
Daryl Cessaradi (Teamster Local Union 705) )
Jim Krahula (Teamster Local Union 705) )
Lisa Hendrickson (Teamster Local Union 705) )

**07CV7095**
**JUDGE SHADUR**
**MAGISTRATE JUDGE COX**

## COMPLAINT

From 2003 through 2005 Larry Kruml, the center manager at United Parcel Service ("UPS")
failed to comply with the Collective Bargaining Agreement ("CBA"). He dishonestly reported to
the Illinois Department of Human Rights ("IDHR") the reasoning for discharging me. My
employee records were embellished, I was excluded from my employment records, disciplined
differently, treated less favorable than other similar situated employees and I was charged with
other employee's errors. Members of Teamsters Local Union 705 denied me participation in the
labor agreement by denying me a timely grievance, a viewing of my employment records and an
investigation of the facts. The Union did not process a grievance on my behalf as similar
situated male employees that were also discharged. I was not discharged for just cause.

I am requesting the court to enforce that the disputed portions of my employment file be
reviewed with the inclusion of my written statements and that false records be expunged.

From March 7, 2005, I would like to request a monetary settlement for the difference in salary
until I am able to maintain the same salary at my present job with a different Local Union 710. I
also lost approximately two years of pension as a teamster. I have to under go two years until I
make top scale pay that was formerly making a UPS. I also lost incurred vacation weeks. I also

incurred legal fees investigating the facts.

1. Larry Kruml (the center manager for UPS) and members of his management team
   engaged in several acts of defamation by alternating the words on customer concerns and
   excluding me from my employment records. I was discharged on March 7, 2005, by
   Kruml. I was not discharged for just cause. I was intentionally and willfully excluded
   from documentation. Daryl Cessaradi (a part-time male UPS employee) and union
   steward at the time was a witness to this. Around February 4, 2005, Kruml discussed a
   complaint that a customer had allegedly filed against me. Kruml gave me no written
   documentation regarding the complaint and I did not engage in any willful misconduct
   that would warrant a customer complaint (Kruml had a history of excluding me from
   documentation since 2003). I left Kruml's office to complete my work assignments when
   he asked Cessaradi, who I barely knew to initial a Document of Conversation. Cessaradi
   confessed he did not read the document. Kruml did not mention disciplinary action while
   Cessaradi and I were in his office.

2. On March 7, 2005, Kruml told me he was discharging me for the complaint I was never
   shown.

3. On March 9, 2005, John Abbot (a coworker from UPS) accompanied me to the Local
   Union 705 Headquarters. We spoke with Local Union 705 Teamster Kenny Emanulson
   about filing a grievance in regards to my discharge. I told him Kruml had given me no
   written warning and that a grievance had to be filed by March 22, 2005, fifteen days after
   my discharge, pursuant to Article Seven of the CBA, I also requested to review my file.

4. Emanulson never filed a timely grievance or got my employment records. Steve
   Prowtoski (a Local Union Agent) told me I did not need a written receipt.

5. I reported this incident to the National Labor Relations Board ("NLRB"). The NLRB
   ruled the Union's apparent negligence was not for arbitrary suspicious or conspicuous
   reasons. The sole purpose of going to the NLRB was to grieve my discharge through the

union. The unfair labor practice that Emanulson filed was to protect himself from never filing a grievance. The Unfair Labor Practice ("UFLP") was that I never received my employment records or an investigation of the facts. Emanulson reassured me that he would refile a UFLP but never did.

6. Since the exclusive representative Teamster Local Union 705 did not represent me as the contract stated pursuant to Article 54 and 7, I filed with the Illinois Department of Human Rights ("IDHR"). I knew that males had gotten customer complaints and were treated more favorable and remained employed.

7. UPS failed to stop the harassment I was receiving from Larry Kruml. Kruml had a history of excluding me from documentation since October 2003. Around October 2003, I reported to the UPS anti-harassment number that Kruml was not showing me my employment records and he was also verbally hostile towards me. Daryl Cessaradi told Ms. Ritchie (Human Resources Director) that Kruml had not given me written documentation of my discharge February 2005 through March 7, 2005.

8. In regards to the documentation in my personal file, from July of 2003 through February 2005, several instances were followed up by part-time office manager Sue Jabrowski. Concerns completed by office manager "Scotti" were embellished. The customer's words were altered from the original complaint which is dishonesty. After showing Ms. Anderson the alleged written complaint against me on February 3, 2005, she gave written testimony regarding her complaint. Ms. Anderson also informed me that the female office manager she spoke with gossiped to her about my employment records. The unprofessional behavior of the "unknown" female office manager was a violation of confidentiality pursuant to IL Law 820 ILCS 40/7. Pursuant to IL 820 ILCS 40/6 Ms. Anderson's written testimony should be attached to the concern UPS has on file.

9. Sue Jabrowski had a history of harassing female workers, including other office managers that worked with her. Marcia Avilla (a female UPS Mexican employee) reported first to Local Union 705 members that Jabrowski was harassing her. Finally

when the union took no action Avilla reported Jabrowski's conduct to IDHR. The
harassment stopped and Avilla remains employed. IDHR 2003CA27613203.

10. I did not engage in any willful misconduct that would warrant a complaint in February of
2005. Specifically on July 29, 2003, the customer concern states      that I was rude and
refused to take a package. The package was labeled for FedEx service. The account Occular
Group was later suspended by UPS.      The concern was embellished by "Scotti." The top
portion of the concern was recorded by a different UPS employee, and the bottom portion of
the concern was completed by "Scotti" who embellished the customer's words.

11. Another customer concern in my employment records was embellished by Kruml's hand
written note, September 3, 2003, "rough handling" was changed to "throwing." The
customers original concern was altered which is dishonesty. I did not engage in any willful
misconduct that would warrant a complaint. Priority Air delivery parcels always takes
precedence over Ground deliveries. Matt ran out of the store 84 Lumber after I had delivered
all the Air parcels to this business. I stopped to accommodate Matt at approximately 10:20
A.M. which is not rudeness. I had minutes to spare to avoid service failure for other Air
Priority parcels. The original customer complaint does not state that I was throwing his
packages, it was embellished by Kruml's handwritten note.

12. Lisa Hendrickson, (a female UPS employee and Union Steward) was present when
Kruml discussed this. I requested Tom McDonogh (a reputable male Union Steward)
pursuant to article 4, CBA to override Hendrickson's representation. After this incident I
requested that Hendrickson not represent me anymore. For the two concerns I was not
shown my employee records at that time. Tom McDonogh, a trained reputable Union
Steward told Kruml to give me a written warning letter Article 54 CBA (See - Request for
Letter to Employee 9/4/03). Then McDonough filed a written grievance on by behalf. This
is correct procedure pursuant to Article 54 of the CBA. Around October 2003, Tom
McDonogh was a witness to the fact that Kruml did not show me my file. He told me that he
had to clean it out. Kruml was fully aware what the procedures were for discipline and
deviated from them in February of 2005, Daryl Cessaradi was a part-time employee that I

barely knew. Kruml intentionally and willfully gave Cessaradi a Document of Conversation to initial while I was out working on a route. Cessaradi left voice message to be subpoenaed in legally to testify that Emanulson never filed a grievance on my behalf. Cessaradi's voice message is partial to this case.

13. As a female worker I was denied the duty of fair representation by the defendants from Teamsters Local Union 705. Three of the defendants failed to follow Kruml's procedures and were treated more favorably.

    A. Lisa Hendrickson (female) exceeded 1199 paid hours and was not disciplined (Weekly Operation Report 11/15/03).

    B. Jim Krahula (male) had a complaint of a rude gesture and was not disciplined by Kruml.

    C. On August 5, 2003, Chris Wilgus (male) was cited for not scanning packages and was not disciplined by Kruml (AM Prescan Audit Summary 8/5/03).

They do not have documents of discipline for failure to follow procedures. I was treated less favorable than males John Abbot, Major Purnell, James Howard and Russell Ronnallo. The following males were all discharged for the alleged offences: John Abbot (white) - dishonesty, Major Purnell (black) - dishonesty, James Howard (black) - failure to bring a package to the customer's door and Russell Ranallo (white) - unprofessional behavior and swearing in front of customers. All the males listed received a grievance and a panel hearing at the Teamsters Local Union 705 headquarters. Russell Ranallo received a monetary settlement for a delayed grievance. UPS falsely reported Ranallo's age and reason for discharge to IDHR. Ranallo was not thirty five years old on December of 2002, UPS falsified Rannalo's age and reason for discharge. John Abbot and James Howard were both reinstated for employment. Major Purnell's case is pending at IDHR.

14. UPS processed over twenty-four documents from my employment records including false customer concerns, erroneous suspensions and false allegations stating that I failed to follow procedures. In violation of my rights under IL Law 820 ILCS 40/0.01-13 and the CBA.

A. I never knew what Kruml was placing in my employment records.

B. The Union never filed a grievance pursuant to the labor contract on my behalf.

C. I received my employment records as late as July 8, 2005.

15. Pursuant to Article 54 nothing past nine months could have been used regarding my discharge on March 7, 2005. Pursuant to Article 7 my discharge was grievable, but I received no grievance or viewing of my employment records from the defendants of Teamsters Local 705 for months and years prior to March 7, 2005.

16. Kruml was not managing the center before 2003 and I was not disciplined or written up for concerns prior to Kruml's management. The employer processed twenty-four documents from my employment records including false customer complaints and false allegations stating that I failed to follow Kruml's procedures. I never saw the documents which violates my rights under IL law 820 ILCS 40/4 and 40/6.

17. February 1, 2001, Mrs. Viler lodged a false complaint against me. The complaint is false for the following reasons:

A. There was no damage and UPS has no proof of damage.

B. I was not employed on the route in which she said I was rude all the time. I was off on a work related injury.

C. No one else in the entire community was requesting me to be removed from the route and Lu-Ann Hunter to be put on the route.

D. The manager has since requested Ms. Viler's complaint be removed from my file.

E. Ms. Viler's concern is over four years old and should be removed from my file for false information.

18. When Kruml became manager in 2003 I was excluded from documentation. I found several erroneous suspensions in my employment file that I never served nor knew they existed, including June 2004. Kruml placed Documents of Conversation in my file that mention discipline without my knowledge, in violation of article 54 CBA. He gave me his version of Ms.

Anderson's complaint and not the written version that was placed in my employment file.

19.  When Kruml was my manager from 2003 to 2005 I was not engaging in any willful misconduct nor I did fail to follow procedures that would warrant a disciplinary write up.  I was treated less favorably than others.  UPS has no proof that similar situated employees engaging in the same alleged failure to follow procedures have a Document of Conversation regarding disciplinary action.  UPS stated to IDHR that I had at least ten instances where I had failed to follow procedure.  Below are the instances I found in my personal file I received on July, 8, 2005.

> A.  On July 29, 2003, I was written up for attendance when I had taken off three days for my Grandmother's funeral.  UPS even sent flowers for the ceremony. I did not exceed my personal days for that year or legal funeral leave.  Drivers Bell and Swallow were also absent but did not receive an attendance memo.
>
> B.  UPS has no proof that Rechia, Rumishek or Wilgus (all males) which were all cited for not scanning packages have disciplinary documents lodged against them.  I could not scan the package on June 26, 2003, because the label was torn.  I gave the torn label to the office manager Sue Jabrowski.  Another parcel was scanned - Sebastion signed for it around August, 6 2003.  Three parcels were not on my truck that is why I did not scan them around October 16, 2003.
>
> C.  On November 20, 2004, I was directed to suite 101 by the office managers and I made verbal contact with the receptionist.  Ms. Tobiaz who was in suite 108 gave written testimony in a letter of praise regarding this incident.
>
> D.  On January 6, 2004, Kruml was fully aware that I went to this pick-up.  I waved to the receptionist and Kruml stated in conversation regarding this concern "you took the candy, not the pick-up."  The male supervisor told me he had directed another driver to "swing by the pick-up."  I followed his directions.  He caused a customer complaint.  I was not issued a disciplinary notice at that time.
>
> E.  In June of 2004 I received one concern that a customer did not receive a

delivery notice. UPS has no proof I failed to leave a notice. From February 2001 through March 7, 2005, I had no other complaints from tenants for not leaving delivery notices. I delivered packages to five or six apartment complexes daily with multiple units.

F. In June of 2004 Kruml stated I failed to check the call-ins. Interestingly enough I spoke to Sue Jabrowski about this package while on route. I asked her why the clerk had failed to reschedule the package. To my knowledge any package that is a third attempt delivery goes to the address clerk for reprocessing. Marcia Avilla told me she was harassed for not taking a third attempt COD package to the clerk. Friday was the third attempt on the package. I told the clerk if the customer calls their neighbor was not home and ask the customer if he or she wants to pick-up the package or reschedule delivery on Monday. The male clerk failed to check the call-ins. I was a clerk around 1988 for about one year, at that time I was voted employee of the month. I overheard the clerk tell Sue Jabrowski how cute she was, he was not going to get in trouble.

G. In June I miss-delivered two parcels that were reasonable errors that other drivers had made. The six looked like an eight. A golf club for one customer was loaded with a group of golf clubs for the golf shop by the pre-loader. Both errors were corrected with no lost merchandise.

H. Wetnight (male) miss-delivered a parcel for 620 Beaver to 720 Beaver. Vito, the customer had to reorder his parcel and gave written testimony regarding his miss-delivery error. Both of my miss-delivery concerns state post to employees record - "NO." The report from the IDHR states that males Paul Deleon and O'Dell Pendelton have several miss-deliveries. Robert Frederick had several miss-delivery complaints. I have in my possession a copy of a miss-delivery error that I corrected for male driver Darren Ross. On December 5, 2004, after speaking on the phone with Sue Jabrowski I informed her I would be happy to correct a miss-delivery error for a co-driver. The error occurred on December 4, 2004, this was charged to my record but it was not my error.

J.  On May, 14 2004, Kruml tried to suspend me for three days for a miss-delivery error that states post to employees record - "NO." The error was corrected within ten minutes. Notation must be made that Daryl Cessaradi's name was pre-typed on the Document of Conversation. The Union steward Pam Treadwell informed Kruml he had to reduce the suspension to a written warning. Following this meeting Kruml informed me that I had miss-delivered parcels on 1/13, 12/5 and 2/17 and I still had to serve a one day suspension. Kruml was manufacturing evidence. I had corrected my miss-delivery error on 1/13 four months prior. Both suites ordered the same product, had similar names, and similar suite numbers. I am only human and did not engage in any willful misconduct. You can't be tried twice for the same offence. 12/5/03 was not my error and on 2/17 there was no miss-delivery. I had four miss-delivery errors from February 2001-March 7 2005 with no claims of lost merchandise from those errors. Also, Kruml made an error on the Document of Conversation by stating that the package was miss-delivered on 1/13/03 instead of 1/13/04.

K.  Kruml was again trying to manufacture evidence of failure to follow procedures. All the males listed on the Air Exception Report delivered Air parcels later in the day after first attempting delivery before 10:30 a.m. The concern states post to employee's record - "NO." It also states I attended to the customer in five minutes.

L.  In June of 2004, I was never informed I was on notice of suspension. Lisa Hendrickson was present and never initialed Kruml's Documents of Conversation and never told me I was on notice of discipline.

M.  On January 6, 2005, I was the only employee written up for discipline for communicating after 3:30 p.m. UPS has no proof that any males listed on the ODS report were written up for discipline. Males: Hoffman, Martinez, Smallwood and several others communicated after 3:30 p.m. Numerous drivers under Kruml's direct management exceeded 1199 paid hours including

Lisa Hendrickson, Jay Haddock and Kevin McCurley. Jennifer Bell and
Terry Burnell exceeded 1199 paid hours on the same route I was assigned.
The minimum requirement to avoid discipline was not achievable by a
reasonable person on that route. The part-timer promoted to my route quit. A
supervisor worked the route and had to call for help. This is a grievable
violation. The union boasts or representing male employee for supervisors
performing union work. Jim Krahula the union steward present during
Kruml's conversation 1/6/2005 informed me he never saw a disciplining
write-up Document of Conversation. A customer also accused Jim Krahula of
doing a rude gesture. Jim Krahula was never disciplined by Kruml for this.
On 1/6/05 I filed a grievance for reduced over-time pursuant to Article 37
CBA. Chris Wilgus (a male steward) denied me a follow-up grievance for the
employer's violations of excessive over-time. Males in the Addison center
were awarded monetary settlements, the Union filed grievances for excessive
over time for them.

20. A letter was sent to UPS dated January 5, 2005, Ms. Lang's address was missing. UPS has
no proof Ms. Lang ordered a parcel on December 15th, 23rd and 29th. I can state I remember
delivering a parcel to Ms. Lang's door, she signed for it. In December 2004 Ms. Lang exhibited
psychotic behavior, she started screaming at me and stated that everyone in the building hated
me. I phoned the Naperville police to report the incident. As stated in Ms. Lang's letter she
accuses me of placing delivery notices under doormats, however, there are no door mats on the
concrete entry way to the building. No one else in the community of three hundred apartments
complained about me. Ms. Young, another tenant of the complex gave written testimony of
praise. Since there is no evidence to support that Ms. Lang's letter is true, Ms. Lang's letter
should be expunged. Manning (Mexican, male employee) were treated more favorably when a
customer threatened to shoot him if he drove the UPS vehicle down his street. John Abbott
(white male) was treated more favorably when a customer falsely accused him of walking on
freshly poured concrete. Ms. Lang's concern was never brought up to me or investigated under
the grievance procedure. Ms Lang's concern was placed in my file without my knowledge in
violation of ILCS 820 40/4.

Finally, everything I am telling the court should have been grieved through the Union. I received no representation from the aforementioned Union agents, though I requested it. I was treated less favorably than the males that were discharged. UPS has no proof that Russell Ranallo was thirty-five years of age in December of 2002, or proof that he was swearing in front of customers as stated in the report given to the IDHR. Russell Ranallo received a monetary settlement when his grievance for discharge was delayed. His employment records were lost but reappeared in the investigation report at IDHR with false allegations of unprofessional behavior.

I feel that Kruml treated me with hostility, discriminatorily and dishonestly during his management term. I feel that Sue Jabrowski dishonestly reported customer concerns ad falsified documentation in my employment records. I feel that the Union members listed failed to oppose the discriminatory treatment I was receiving when it came within the scope of the CBA. I feel as though Kenny Emanulson did not process my grievance on my behalf and informed other Union members not to talk to me.

*Kathryn M. Lakeberg*    December 18, 2007

Kathryn M. Lakeberg

4909 Cross Street

Downers Grove, IL 60515

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Kathryn M. Lakeberg<br>4909 Cross Street<br>Downers Grove, IL 60515 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2800<br>Chicago, IL 60661 |
|---|---|---|---|

Certified Mail: 7099 3400 0014 4054 4208

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 21B-2005-02780 | Armernola P. Smith,<br>State & Local Coordinator | (312) 886-5973 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*John P. Rowe*                                    9/20/07

| Enclosures(s) | John P. Rowe,<br>District Director | (Date Mailed) |
|---|---|---|

cc:    **UNITED PARCEL SERVICE**



United States Government

**NATIONAL LABOR RELATIONS BOARD**

Region 13

200 West Adams Street - Suite 800

Chicago, IL   60606-5208

(312) 353-7643

June 7, 2005

RE:  Local 705, IBT
13-CB-18084

Ms. Kathy Lakeberg
4909 Cross
Downers Grove, IL  60515

Dear Ms. Lakeberg:

The above captioned charge has been fully investigated.  From the investigation, the evidence does not show that the union failed to represent you by failing to timely process your grievance.  No evidence was presented to show that the union's failure to timely file a grievance was motivated by arbitrary, capricious or discriminatory reasons. The union's apparent negligence does not constitute a violation under the law.  The Region has therefore determined that your charge will be dismissed absent your voluntary withdrawal of same.

Enclosed for your convenience should you wish to withdraw the case is a Withdrawal Request form.  Please sign and date the form where indicated and mail the completed form back to our office to my attention.  Our office must receive the completed form by close of business June 10, 2005 or the charge will be dismissed.  If the charge is dismissed, the Union will receive a summary report stating the reasons for dismissal.  If you withdraw the charge, no report issues.

If you have any questions, do not hesitate to phone me.  Thank you for your prompt attention to this matter.

Very truly yours,

Jessica Willis Muth
Attorney

Enclosure

EEOC Form 5 (5/01)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 210-2005-03781 |

**Illinois Department Of Human Rights** and EEOC

*State or local Agency, if any*

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Ms. Kathryn M. Lakeberg | (630) 960-9489 | 04-09-1958 |

Street Address — City, State and ZIP Code
**4909 Cross Street Downers Grove, IL 60515**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| UNITED PARCEL SERVICE | 500 or More | (630) 628-2116 |

Street Address — City, State and ZIP Code
**150 Lombard Road,  Addison, IL 60101**

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address — City, State and ZIP Code

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☐ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **05-30-2004**   Latest **03-07-2005**
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was employed by Respondent since April, 1989.  My most recent position was Package Car Driver.  For the last couple of years, I have been subjected to different terms and conditions of employment than male employees, in that I was suspended on or about June 8, 2004, for misdeliveries while male drivers with multiple misdeliveries have not been suspended; a male driver who does a split-off with my route is allowed to pick the packages he will deliver; on February 22, 2005 I was questioned about punching out after an 8-hour day while two males who punched out before me after 8 hours were not questioned; and I was terminated on March 7, 2005 for customer complaints while several male drivers with numerous customer complaints against them remain employed.

I believe I have been discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED EEOC

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Mar 25, 2005     *Kathryn M. Lakeberg*  Date                  Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

| *CHARGE OF DISCRIMINATION* | | AGENCY | CHARGE NUMBER |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form. | | [X] IDHR | **2006CA0255** |
| 06W0804.07 | | [X] EEOC | |

### Illinois Department of Human Rights and EEOC

| NAME (*indicate Mr., Ms., Mrs.*) | | | HOME TELEPHONE (*include area code*) |
|---|---|---|---|
| KATHRYN M.   LAKEBERG | | | 630-960-9489 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | | DATE OF BIRTH |
|---|---|---|---|
| 4909 CROSS | DOWNERS GR, IL 60515 | | 04/09/58 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (*IF MORE THAN ONE, LIST BELOW*)

| NAME | NUMBER OF EMPLOYEES, MEMBERS 15+ | TELEPHONE (*include area code*) |
|---|---|---|
| UNITED PARCEL SERVICE | | 630 628 2116 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 150 S LOMBARD | ADDISON, IL 60101 | 031 |

| NAME | TELEPHONE (*include area code*) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

| CAUSE OF DISCRIMINATION BASED ON: | DATE OF DISCRIMINATION |
|---|---|
| SEX          AGE | EARLIEST (ADEA/EPA)    LATEST (ALL) |
| | / /          03/07/2005 |
| | [ ] CONTINUING ACTION |

THE PARTICULARS ARE (*if additional space is needed attach extra sheet(s)*)

I.    A.    ISSUE/BASIS

DISCHARGE, ON OR ABOUT MARCH 7, 2005, BECAUSE OF MY SEX, FEMALE.

B.    PRIMA FACIE ALLEGATIONS

1.    My sex is female.

2.    I have satisfactorily performed my duties as a Package Car Driver, and have been employed with Respondent since April, 1988.

3.    On or about March 7, 2005, I was discharged by Larry Krummel (male), Respondent's Center Manager. Krummel stated that I was being discharged because of a complaint which was lodged against me by a customer. No documentation was received from Krummel, or any other member of Respondent's management

(Continued)

DEPT. OF HUMAN RIGHTS
SWITCHBOARD
AUG 1 1 2005

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO, BEFORE ME |
|---|---|
| | _Krystal I. Rogers_    8/5/05 |
| | NOTARY SIGNATURE    MONTH DATE YEAR |

**"OFFICIAL SEAL"**
Krystal I. Rogers
Notary Public, State of Illinois
My Commission Expires Nov. 15, 2006

x _Kathryn M. Lakeberg_  8/5/2005
SIGNATURE OF COMPLAINANT          DATE
I declare under penalty that the foregoing is true and correct. I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

EEOC FORM 5 (5/45)          FEP/ACFS

Complainant Name:    **KATHRYN M. LAKEBERG**

Charge Number:    **2006CA0255**

Page 2

which validated Respondent's reason for the discharge; nor did I engage in an act of willful misconduct which merited being discharged by the Respondent.

4.    I believe that there have been other, similarly situated, male package car drivers, such as Christian Wetnight and others, that have had a complaint lodged against them by a customer, but they were not discharged by the employer as I have been.

## II.    A.    ISSUE/BASIS

DISCHARGE, ON OR ABOUT MARCH 7, 2005, BECAUSE OF MY AGE, 47.

### B.    PRIMA FACIE ALLEGATIONS

1.    I am 47 years of age.

2.    I have satisfactorily performed my duties as a Package Car Driver, and have been employed with Respondent since April, 1988.

3.    On or about March 7, 2005, I was discharged by Larry Krummel (43), Respondent's Center Manager.    Krummel stated that I was being discharged because of a complaint which was lodged against me by a customer.    No documentation was received from Krummel, or any other member of Respondent's management which validated Respondent's reason for the discharge; nor did I engage in an act of willful misconduct which merited being discharged by the Respondent.

4.    I believe that there have been other, similarly situated, younger package car drivers, such as Christian Wetnight and others, that have had a complaint lodged against them by a customer, but they were not discharged by the employer as I have been.

ACF/JJT/RCG

Case 1:07-cv-07095    Document 25-4    Filed 04/22/2008    Page 18 of 35

## STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF THE            )
REQUEST FOR REVIEW BY:          )
                                )
KATHRYN M. LAKEBERG             )        CHARGE NO:   2006CA0255[1]
                                )        EEOC NO:     21BA52780
                                )
                                )

### ORDER

This matter coming before the Chief Legal Counsel upon Complainant's Request for Review ("Request") of the dismissal by the Department of Human Rights ("Department") of Charge No. 2006CA0255, Kathryn M. Lakeberg, Complainant, and United Parcel Service, Respondent; and the Chief Legal Counsel having reviewed de novo the Department's investigation file, including the Investigation Report ("Report"), and Complainant's Request and supporting materials; and the Chief Legal Counsel being fully advised of the premises;

NOW, THEREFORE, it is hereby ORDERED that the Department's dismissal of Complainant's charge is SUSTAINED on the following ground:

### LACK OF SUBSTANTIAL EVIDENCE

In support of which determination the Chief Legal Counsel states the following findings of fact and reasons:

1.      Complainant filed a charge of discrimination with the Department on August 5, 2005, alleging that Respondent discharged her because of her sex, female ("Count A"), and her age, 47 ("Count B"), in violation of Section 2-102(A) of the Illinois Human Rights Act. On August 25, 2006, the Department dismissed Complainant's charge for Lack of Substantial Evidence. On September 29, 2006, Complainant filed this timely Request.

2.      As to Counts A and B, Complainant, a former Package Delivery Driver, alleges that on March 7, 2005, Respondent discharged Complainant because of her sex and age. Complainant further alleges that similarly situated, Christian Wetnight ("Wetnight")(male, 30), engaged in similar conduct as Complainant and was not discharged.

3.      As to Counts A and B, Respondent's articulated non-discriminatory reason is that it discharged Complainant for receiving numerous customer complaints and a history of discipline.

4.      As to Counts A and B, the Department's investigation did not reveal that Respondent discharged Complainant because of her sex and age. The investigation revealed that Complainant had a history of discipline. The evidence shows that from February 2001, through March 2004, Complainant had been subjected to twelve customer complaints and ten instances where Complainant failed to follow Respondent's delivery procedures. On July 20, 2004, Respondent suspended Complainant for customer complaints (i.e., misdeliveries and wrong delivery times) and failure to follow delivery procedures (i.e., failure to leave service notices and failure to check call in sheets). On January 5, 2005, a customer, Dionne Lang ("Lang") (sex and age unknown), wrote a letter to Glen Schmidt (male, age unknown), Manager, complaining that Complainant did not deliver the packages to Lang's door and that Lang has reported this to Respondent on three separate occasions. On February 3, 2005, another customer, Bernadine Anderson ("Anderson") (sex and age unknown), wrote a letter to Respondent's management indicating that Complainant was "the most miserable person she's come to contact with" and complaining that Complainant told Anderson, "you ruined my lunch". Anderson further reported that this is the third time Complainant displayed a rude attitude and that she does not want Complainant to deliver to Anderson any longer. On February 4, 2005, Respondent sent Complainant a notice of termination and discharged her on March 7, 2005, for history of discipline and for numerous customer complaints about service.

5. Further, as to Counts A and B, the evidence showed that Wetnight received three customer complaints about service: one in 2001, two in 2003, and one in November 2005, (i.e., that Wetnight was argumentative with a customer related to a scheduled pickup). The evidence shows that Wetnight had less customer complaints than Complainant. Additionally, the evidence revealed that on December 13, 2002, Respondent discharged Russell Ranallo (male, 35), Package Delivery Driver, for failure to follow directions and for unprofessional behavior in that he swore in front of customers. The Department's investigation did not reveal that Respondent treated similarly situated male or younger Package Delivery Drivers more favorably than Complainant. There is no nexus between Complainant's discharge and her sex or age. There is no substantial evidence that Respondent discharged Complainant because of her sex or age.

6. In her Request, Complainant fails to provide any additional evidence, which would warrant a reversal of the Department's original determination. To her Request, Complainant attaches copies of the certain sections of Collective Bargaining Agreement with Respondent and Complainant's union; audit delivery sheets and statistics; some handwritten notes from Complainant; a business card from a Police Officer of Addison, Illinois; disciplinary forms/sheets, union grievance forms; a note from Glen R. Schmidt, Manager, several letters from Respondent's Attorney to Complainant; a letter from Complainant to Respondent's Human Resources Department, dated June 19, 2006; several customer complaints regarding Complainant, an email from Timothy Lippeth to Lawrence Kruml ("Kruml"); letter from Therese R. Young, dated July 18, 2005; a letter from Robert [2] undated; several Customer Concern Reports documenting telephone calls to Respondent's Customer Service Department; several barcodes and shipment labels with notes on them; a letter from Kristina Puente, customer, dated April 18, 2005; several Air Exception Reports; several Documents of Conversation (i.e., written warnings) for Complainant; a letter from Tim Madura, customer, undated; letter from Tom McDough, union steward, to file, undated; Complainant's earning sheets; an Attendance Memo for Kruml; a Memo from Kruml to Tom Haefke, dated July 29, 2003; several of Complainant's notes and letters to her personnel file; a letter from Reggie Dominick to Reggie Dominick, dated January 14, 2003; several stop details; and several documents from Complainant's personnel file. None of these documents provide any new evidence warranting a reversal of the Department's original determination or proving that Respondent harbored any discriminatory animus towards Complainant because of her sex and age.

7. Furthermore, in her Request, Complainant alleges that Respondent: 1) denied her union representation; 2) subjected her to retaliation and harassment; and 3) suspended her. The Chief Legal Counsel must strictly adhere to the charge of discrimination. Deen v. Lustig, 337 Ill.App.3d 294, 305-06, 785 N.E.2d 521, 531-32 (4th Dist. 2003). In her charge, Complainant did *not* allege that Respondent denied her union representation, subjected to retaliation and harassment, or suspended her. Thus, the only dispositive issues of Complainant's charge is whether Complainant was discharged because of her sex and age. Therefore, the Chief Legal Counsel cannot consider claims that are not listed in Complainant's original charge. Lastly, the Department does not have jurisdiction over union representation disputes. Complainant's Request is not persuasive.

8. In sum, Complainant failed to establish, and the Department failed to show, that Respondent discharged Complainant because of her sex ("Count A") and age ("Count B").

9. This is a final Order. A final Order may be appealed to the Appellate Court by filing a petition for review, naming 1) the Chief Legal Counsel, 2) the Department, and 3) Respondent as appellees, with the Clerk of the Appellate Court within 35 days after the date of service of this Order. The Department deems "service" complete 5 days after mailing.

ENTERED THIS _____ DAY OF _____, 2007.

_____
Chief Legal Counsel

Charge No. 2006CA0255
Page 3 of 5

investigation revealed that Complainant was placed on notice of termination (Exhibit F) effective February 4, 2005, and that the discharge (Exhibit G) was carried out on March 7, 2005.

7.    The investigation revealed that driver Christian Wetnight's disciplinary file (group Exhibit H) included complaints related to package delivery, specifically one in 2001, two in 2003, and one complaint in November of 2005 identifying Wetnight as being argumentative with a customer related to a scheduled pickup time on one occasion when filling in for another driver.

8.    The investigation revealed the following concerning Complainant's similarly situated coworkers (Group Exhibit I):  Paul DeLeon (male, 42), package driver, had received complaints related to misdelivered parcels, but had no complaints related to his attitude/conduct toward customers; Odell Pendelton (male, 40), package driver, was warned about misdeliveries, about a customer concern related to his behavior during a delivery in February of 2004, and in November of 2005 reportedly rolled his eyes at a customer during a conversation about where to leave packages on the customer's property; and Robert Frederick (male, 42) package driver, had received a written warning in July of 2005 related to his blatant refusal to follow directions from management, was counseled about proper language and conduct in April of 2006, and had received several complaints related to misdelivered parcels.  The investigation revealed that none of these employees had been discharged by Respondent.

9.    The investigation revealed that Respondent had also discharged (Group Exhibit J) Anthony Bermes (male, 30), package driver, on March 21, 2005, for his failure to report an accident with his vehicle to management; Russell Ranallo (male, 35), package driver, on December 13, 2002, related to his failure to follow directions, including being unprofessional and swearing in front of customers; Greg Marquard (male, 33), package driver, on February 10, 2004, for failure to fulfill participation requirements related to his continued employment; (Fred Robertson (male, 35), package driver, on January 31, 2005, for failing to call in while receiving medical attention for a job related injury.

## Analysis

The Department's investigation did not reveal that Respondent discharged Complainant because of her sex or age.  The investigation did not reveal that Respondent treated similarly situated male or younger drivers more favorably than Complainant.  The investigation revealed that Complainant had been disciplined and warned about her continued unsatisfactory performance, which ultimately led to her discharge.  The investigation did not reveal that Complainant's comparative was similarly situated to Complainant.  The investigation revealed that male and younger drivers were also discharged by Respondent under similar circumstances.

On March 9, 2005 I accompanied
Kathy Fisking to the Teamsters 705 union
hall at 1645 w. Jackson St. Chicago. The purpose
of our trip was to speak to Kenny
Emanualson about filing a grievance for
Kathy. Kenny Emanualson was in the
office and spoke with Kathy in front
of me about filing the grievance
and Kathy made mention a few times
of the time table involved with
filing the grievance. Kenny Emanualson
acknowledged and agreed to taking care
of the matter

John Abbott
John Abbott
630-665-6104

Kathy this is Darrell, I will call back later on try not to call my house because my wife is so paranoid. Yeah I talked to Kenny today and he said something that you were up in front of the labor what you had told me about before. AOL or something like that. But I need to talk to you and I will give you a call, I will try to call you when I get home around 10:00. I did talk to Kenny and he told me "don't sign anything that Kathy is trying to give you and this and that." I asked him about the insurance thing, I mean not the insurance thing the initials I wrote on the paper and he said "yeah you did that and that's how she got fired." And I questioned him on why didn't he do a grievance after that and he said "what was I going to grieve, who was going to sign the paper" And I go, what do you mean who was going to sign the paper? If you file a grievance and you put it in front of him and you tell him to sign that because you know after March 7th I said why didn't you file a grievance within 15 days? And he said yeah who was going to sign the grievance? And I said what?! What who was going to sign the grievance? I said what are you talking about? They would have signed the grievance if you would have filed a grievance. And then he tried to, and I was getting a little bit loud and then he left. Yeah he is blaming me why you are off of work, why you got terminated. It's all my fault. And so if there is anything that needs to be done um real quick before I loose my recording here, I need to be subpoenaed in legally. You know just do that, if you are going to do anything get a lawyer and have me subpoenaed in for a testimony and I'll do it. But I'm just saying this is ridiculous. He is blaming me for everything and I'm like he didn't do anything for you. He didn't do a darn thing. And apparently this union labor is saying that he filed for you Friday for the Union Labor, I forgot the name of it. The ULA or something. He said he filed Friday but to me it seems like there is no concern in his voice, you know what I mean like "oops there it goes she is done and over with." I hope I don't get you upset with this phone call. I will call you up uh tomorrow when I get off work and I'll have your number with me unless if you can call later on this afternoon, my wife will not be home. I'll call you up, try not to call the house. My wife gets really nervous when she starts hearing me talk like this she gets paranoid and uh. My job is on the line I feel like too. My job feels like it is on the line like if I make one cross I feel like then the Union is not going to protect me. It's like this is crazy I gotta do everything right at work, I just gotta keep my horseblinders on and just do my job and don't talk to anybody and be there on time and get off of work and just leave. But um I will talk to you tomorrow, definitely in the morning if I don't get in touch with you later this afternoon. Okay I'm sorry, I will talk to you later goodbye.


Good morning Kathy it's Jessica. In response to your question about the union's charge the investigation was completed and we determined that there wasn't enough evidence to show that the employer unilaterally made any changes to the disciplinary system. And or did not make unilateral changes in the grievance procedure when it adhered strictly to the contract about the time targets. We have determined to dismiss the charge.

Kathy Lakeberg
4909 Cross st.
Downers Grove, Illinois
60515
630-960-9489

July 16, 2005

Mr. Hoffa

Dear Sir:

My name is Kathy Lakeberg, and I have been a member of local 705, employed by United Parcel Service since 1988. In March of this year I was terminated by UPS for a series of concerns called in by customers. At the time of my termination I was a package car driver in the Naperville center at the Addison hub.

The reason that I am writing to you directly is that I have not been properly represented by my local union. I was terminated on March 7th of this year, On March 9th, I contacted my business agent Kenny Emmanuelson. I explained the situation regarding my termination to him, and asked him to file a grievance; he assured me he would take care of it. During the next few weeks phone calls were exchanged between us and I kept asking what the status of my grievance was, and I felt as though I was not getting straight answers. Finally during one phone call, Kenny informed me that UPS would not hear my case because the grievance was not filed within the prescribed time. Kenny told me that he would file an unfair labor practice. After that I went down to the union hall and questioned Kenny as to why the grievance was not filed in time and he asked me "when did you ever ask me to file a grievance". He acted as if he had no idea what was going on. I told him "March 9th". He responded "no,no,no". At this point I knew something was not right with my situation.

Since then I have had limited contact with my local, but they do not seem to want to do anything to help my situation and get my case heard. I don't know where to turn anymore for help. I just want to get my job back and move on.

I am hoping that there is somebody there in Washington that can respond to me and give me some direction. I am certain that my termination was not handled properly by UPS, and given the opportunity to have my case heard; I would have been awarded my job back. I have witnesses, and documentation that can support my case, the only thing that seems to be lacking is representation from my local union.

In my 15 years of Teamster membership I have never heard of a termination case where the local has failed to file a grievance on a brother's behalf. I just want the opportunity to have my case heard. I am hoping somebody here can step in on my behalf and get me the type of representation that I am entitled to as a member of the INTERNATIONAL BROTHERHOOD OF TEAMSTERS.

Sincerely,

Kathy Lakeberg
Member Local 705

# INTERNATIONAL
# BROTHERHOOD OF TEAMSTERS
### AFL-CIO

| JAMES P. HOFFA | C. THOMAS KEEGEL | KEN HALL |
|---|---|---|
| General President | General Secretary-Treasurer | Vice President |
| | | Eastern Region |
| | | Director |
| | | Parcel and Small Package |
| | | Trade Division |

July 25, 2005

Mr. Stephen E. Pocztowski, Secretary-Treasurer
Teamsters Local Union No. 705
1645 West Jackson Boulevard
Chicago, Illinois 60612

Dear Brother Pocztowski:

The enclosed letter to General President Hoffa from Local 705 member Kathy Lakeberg is being forwarded for your review and response.

Please provide me with a written report of the Local Union's position in this case, as well as the current status.

Your prompt attention to this request is appreciated.

Fraternally yours,

*Ken Hall (s)*

Ken Hall, Director
Parcel and Small Package
Trade Division

KH:tr

Enclosure

cc:   Kathy Lakeberg

# Robert D. Banzuly, Attorney

Suite 1800 ~ 10 South Riverside Plaza ~ Chicago, Illinois 60606
Tel. 312-953-4268   Fax 312- 474-6099
faselus@aol.com

July  2006

*7/1/06*

*KATHY,*

*Please review &
call me —
R__*

Ellen M. Girard
UPS Attorney
500 West Madison Street
Chicago, IL 60661

Teamsters Local 705
1645 W. Jackson
Chicago, IL  60612

## NOTICE OF GRIEVANCE OF KATHY LAKEBERG

Kathy Lakeberg has retained me to advise you as follows:

On June 3, 2006, as a result of receiving a written statement from Bernadine
Anderson, a copy of which is enclosed, she first became aware that UPS
apparently recklessly or intentionally submitted false testimony regarding
this matter at the meeting between its management and Ms. Lakeberg's
Union.  See the enclosed Document of Conversation which Ms. Lakeberg
recently found in her personnel file.

Because said incident was the apparent cause of her termination Kathy
Lakeberg hereby files her grievance and demands, that in accordance with
her rights under the labor management agreement between Teamsters Local
705, that the grievance process with respect to her wrongful discharge be
immediately commenced.

That if said process is not immediately commenced she will consider it to be an intentional act on the part of Local to harm her and will consider that UPS intentionally defamed her and will act accordingly.

Please direct your reply and/or questions to me.


Robert D. Banzuly



By Robert D. Banzuly
As Attorney for Kathy Lakeberg

June 3, 2006

In reference to my
Complaint (new # 369-0171
on 2/3/05 @ 14:46
1340 McDowell Rd.
# 201
Napervelle, Ill. 60563
I did not state she was the
most meserable person that I
have come in contact with.
I am a sales associate.
She has apologized & I
had accepted. We were
both not in the right mood
and that happens to alot

people at times

So my intention was not so crucial that she get fired - I would prefer she have her job since she was nice enough to come back & we talked it out & both apologized for having a bad day.

Thank You

Respectfully

Barbara Anderson

P.S.

Also, I enjoy & trust
UPS for delivery & will
not charge me service.

_[signature]_

630-267-7739
cell phone

4117 Landing Dr.
Apt. 1C
Aurora, Ill. 60504
Chesapeake Landing



# Teamsters Local Union 705

chartered as

Truck Drivers, Oil Drivers, Filling Station and Platform Workers Local Union No. 705

### AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS

1645 WEST JACKSON BLVD  •  CHICAGO, ILLINOIS 60612  •  Phone: (312) 738-2800    101

**Executive Board**

STEPHEN E. POCZTOWSKI
*Secretary-Treasurer*

JOSEPH BAKES
*President*

GREGORY R. FOSTER
*Vice-President*

JUAN CAMPOS
*Recording Secretary*

JON CLARY
*Trustee*

SANTOS M. MARINEZ
*Trustee*

EDMUND J. URBANIAK
*Trustee*

**Elected Business Agents**
LORELEI ANDERSON
KENNETH J. EMANUELSON
WALTER KOBYLANSKI
JOE RODRIGUEZ

July 6, 2006

Kathryn Lakeberg
4909 Cross St.
Downers Grove, IL 60515

Re:   UPS Termination

Dear Ms. Lakeberg:

I am writing in response to your June 19, 2006 correspondence to the Union. You were advised last year that the Union was unsuccessful in its attempts to have you reinstated and this case was closed at that time. There is nothing further the Union can do for you concerning this matter under the parties' collective bargaining agreement at this point.

We wish you the best of luck.

Sincerely,

Marilyn T. Brassil

cc:   Stephen Pocztowski
      Kenny Emanuelson

***EMPLOY UNION LABOR---INVEST IN THE BEST***

Form 734 M



# *Teamsters Local Union 705*

chartered as

Truck Drivers, Oil Drivers, Filling Station and Platform Workers Local Union No. 705

AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS

1645 WEST JACKSON BLVD  •  CHICAGO, ILLINOIS 60612  •  Phone: (312) 738-2800

**Executive Board**

STEPHEN E. POCZTOWSKI
*Secretary-Treasurer*

JOSEPH BAKES
*President*

GREGORY R. FOSTER
*Vice-President*

JUAN CAMPOS
*Recording Secretary*

JON CLARY
*Trustee*

SANTOS M. MARINEZ
*Trustee*

EDMUND J. URBANIAK
*Trustee*

**Elected Business Agents**
LORELEI ANDERSON
KENNETH J. EMANUELSON
WALTER KOSYLANSKI
JOE RODRIGUEZ

August 3, 2006

Robert Banzuly
Attorney
10 South Riverside Plaza, Suite 1800
Chicago, IL 60606

Re:    Kathy Lakeberg

Dear Mr. Banzuly:

I am writing in response to your August 1, 2006 correspondence.  As the Union has already advised Ms. Lakeberg, we were unsuccessful in our attempts to have her reinstated last year and there is nothing further that we can do for her at this time.

We wish Ms. Lakeberg the best of luck in her future endeavors.

Sincerely,

Marilyn Brassil

cc:    Stephen Pocztowski
       Joe Bakes
       Kenny Emanuelson

*EMPLOY UNION LABOR—INVEST IN THE BEST*

Form 731 M



Quarles & Brady LLP

Citicorp Center
500 West Madison Street
Suite 3700
Chicago, Illinois 60661
Tel 312.715.5000
Fax 312.715.5155
www.quarles.com

Attorneys at Law in:
Phoenix and Tucson, Arizona
Naples and Boca Raton, Florida
Chicago, Illinois
Milwaukee and Madison, Wisconsin

Ellen M. Girard          312/715-5051
E-Mail                   egirard@quarles.com

April 28, 2005

**VIA U.S. MAIL**

Ms. Kathy Lakeberg
4909 Cross Street
Downers Grove, IL 60515

       Re:    Request for Personnel Records

Dear Ms. Lakeberg:

This letter is in response to your recent request to UPS to obtain copies of your personnel records. Given the fact that you have an EEOC charge pending against UPS, your request for personnel records is being denied pursuant to 820 ILCS 40/10(f).

If you have any questions, please feel free to contact me.

Very truly yours,

*Ellen M Girard*

Ellen M. Girard

June 23, 2005


Marilyn Rithcie
UPS Human Resources
150 S. Lombard Road
Addison, Illinois 60101



Dear Mrs. Rithcie:

Pursuant to the personal Records Review Acts, 820ILCS40-0.01, et seq., I respectfully request an opportunity to review my personal records with in seven working days of the request. I also respectfully request a copy of my personal records as soon as maybe possible. Please advise me of any fees that may be involved.

Sincerely,


Kathryn M. Lakeberg

KML/lel



Citicorp Center
500 West Madison Street
Suite 3700
Chicago, Illinois 60661
Tel 312.715.5000
Fax 312.715.5155
www.quarles.com

Attorneys at Law in:
Phoenix and Tucson, Arizona
Naples and Boca Raton, Florida
Chicago, Illinois
Milwaukee and Madison, Wisconsin

Ellen M. Girard    312/715-5051
E-Mail    egirard@quarles.com

July 8, 2005

**VIA U.S. MAIL**

Ms. Kathy Lakeberg
4909 Cross Street
Downers Grove, IL 60515

Re:    Request for Personnel Records

Dear Ms. Lakeberg:

Pursuant to your request to Marilyn Ritchie, enclosed is a copy of your personnel file that is stamped UPS 0001-UPS 0363.

Very truly yours,

Ellen M. Girard

Enclosures

QBCHI\920018.00540\409752.1

Kathryn M. Lakeberg
4909 Cross Street
Downers Grove, IL 60515
630.960.9489, cell:  630.969.7242

Office of Human Resources
United Parcel Service
150 South Lombard
Addison, IL 60101

To Whom It May Concern,

Enclosed are twenty-four documents that I found in my personnel record file.

I disagree with the information contained for the reasons given in my written statements, which I have attached to said documents.

Pursuant to Illinois Law 820ILCS 40/6, I hereby request that said documents be expunged from my records.

If this is not granted, I hereby demand that my written position statements be enclosed in my personnel file and be processed and administered in accordance with the Illinois law.

If you have any questions please call the phone numbers listed on the top of the letter.

Thank you,

*Kathryn M. Lakeberg*    JUNE 19, 2006
Kathryn M. Lakeberg